IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| JOSHUA QUIGLEY, | ) | |
| | ) | |
| Plaintiff | ) | 1:24-CV-00336-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| INSTITUTIONAL EYE CARE, LLC, | ) | |
| SCOTT HARTZELL, MD, JAQUELINE | ) | MEMORANDUM OPINION ON |
| CARINGOLA, OD, | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | |
| Defendants | ) | IN RE: ECF NOS. 30, 32 |
| | ) | |

Pending before the Court are two motions to dismiss Plaintiff's Complaint under Fed. R.

Civ. P. 12(b)(6), one filed by Defendant Dr. Scott Hartzell, MD (ECF No. 30), and the second, by

Defendant Jacqueline Caringola, OD (ECF No. 32).  For the reasons stated herein, the Defendants'

motions will be denied.[1]

## I.      Procedural Background

Plaintiff Joshua Quigley ("Quigley") is an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC") at its State Correctional Facility at Forest ("SCI-Forest"). His

Amended Complaint—the operative pleading before the Court—names three defendants: Scott

Hartzell, MD ("Dr. Hartzell"), Jacqueline Caringola, OD ("Dr. Caringola"), and Institutional Eye

Care, LLC ("IEC"). Count I of Quigley's two-count Amended Complaint asserts an Eighth

Amendment claim against both Dr. Hartzell and Dr. Caringola under 42 U.S.C § 1983 based on

allegations that each acted with deliberate indifference to Quigley's serious medical needs.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings under 28
U.S.C. § 636(c).

Count II is a professional negligence claim against all Defendants, including a vicarious liability claim against IEC based on it alleged status as Dr. Caringola's employer.[2]

Dr. Hartzell and Dr. Caringola have each moved to dismiss Count I of the Amended Complaint on the grounds that Quigley's allegations do not support a plausible inference that either acted with deliberate indifference to his serious medical needs. *See* ECF Nos. 31 (Dr. Hartzell's brief), 33 (Dr. Caringola's brief). Dr. Hartzell further urges the Court to decline to exercise supplemental jurisdiction over Quigley's state law medical negligence claims upon dismissal of his Eighth Amendment claim. *See* ECF No. 31, p. 5. Quigley has filed briefs in opposition to each Defendant's motion. *See* ECF Nos. 41, 42.

## II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See*, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

---

[2] IEC has filed an Answer in which it denies it is Dr. Caringola's employer. ECF No. 47, ¶4.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## III.    Material Facts

The following factual allegations of the Amended Complaint are accepted as true for purposes of the Defendants' motions to dismiss. On February 16, 2023, around 3:00 am, Quigley was attacked by his cellmate who had a history of violent conduct. ECF No. 19, ¶ 10. Quigley's injuries from the attack included an orbital fracture, a hematoma to the back of the left side of his head, lacerations, bruising, swelling, and blurred vision in his left eye. *Id.*, ¶ 11, 12.

A registered nurse initially assessed Quigley at 7:55 am that morning.  At 2:54 pm that afternoon, Dr. Caringola performed an optometric examination upon Quigley. *Id.*, ¶¶ 12, 13. She recorded that Quigley did not have vision changes and that his acuity was 20/25. *Id.*, ¶ 13. Dr. Caringola recommended Quigley return to the eye clinic in two weeks and follow up in a month. *Id.*, ¶ 14. She did not perform a peripheral retinal examination. *Id.*, ¶¶ 34, 35.

Dr. Caringola again saw Quigley on March 16, 2023, and noted that he had lasting pain around his left eye, distorted vision, pigment in the vitreous of his left eye, and "slight irregular pupil border bowman 2:30 and 3 o'clock OS [left eye]." *Id.*, ¶ 15. She concluded that Quigley had "visual distortion/blur 360 periphery OS [left eye] since BFT [blunt force trauma] w/ no obvious

cause on today's exam." *Id*. She referred Quigley to the on-site retina clinic for further evaluation and prescribed him acetaminophen for sixty days. *Id,* ¶ 16. Dr. Caringola did not perform a peripheral retinal examination. *Id*., ¶¶ 34, 35.

Quigley first saw Hartzell at the prison's on-site retinal clinic on April 5, 2023. Dr. Hartzell assessed Quigley's vision acuity had reduced to 20/70 but noted "no evidence of pathology." *Id,* ¶ 17. Dr. Hartzell directed that Quigley reconsult at the IEC clinic as needed. *Id.* ¶ 18. Dr. Hartzell did not perform a peripheral retinal examination. *Id.*, ¶¶ 34, 35.

Later in April, Quigley submitted two Medical Sick Call Request forms complaining of worsening vision. *Id.*, ¶ 19. He submitted two additional Medical Sick Call Requests on May 5 and May 7, 2023, complaining of loss of peripheral vision, blurred vision, and flashes of light. *Id*, ¶ 20. He received no response to any of these requests. *Id.*, ¶¶ 19, 20. On June 8, 2023[3], Quigley submitted a fifth Medical Sick Call Slip Request to which he received the response, "I've made you an appointment at our next available Eye Clinic." *Id.*, ¶ 21.

On July 6, 2023, Quigley was seen in the prison medical department by a certified nurse practitioner (CRNP) who reported his acuity as 20/200 and noted that he had very little vision in his left eye. *Id.*, ¶¶ 22, 23. The CRNP then referred him to an offsite retina clinic for evaluation as soon as possible. *Id.*, ¶ 23.

Later on July 6, 2023, Quigley saw Dr. Caringola again at the on-site optometry clinic. *Id.*, ¶ 24. She noted that he "feels [left eye] has been steadily getting worse over the last couple months. Can't see to temp [temporal] side or bottom OS [left eye], flashes when closed eye for about 2 months. Feels started about 1 month after I last saw him. Did have evaluation with IEC [Institutional Eye Care] clinic, no pathology noted." *Id*. She also concluded, "No overt RD [retinal

---

[3] The Amended Complaint gives the date of this sick call request as June 8, 202<u>4</u>. ECF No. 19, ¶ 21. This appears to be a typographic error as the sequence of all events place this request in 2023.

detachment] noted OS [left eye], vision and field loss seems worse than what retina looks like. Possible far periph [peripheral] detachment vs schisis." *Id.*, ¶ 25. She referred Quigley to an off-site retinal specialist. *Id.*

On July 17, 2023, a non-party retinal specialist at Retina Vitreous Consultants diagnosed Quigley's vision loss as retinal detachment in his left eye. *Id.*, ¶ 26.[4] The doctor also noted PVR [proliferative vitreoretinopathy], signifying a complex detachment originating from a large tear, and scheduled Quigley for retinal surgery. *Id.*, ¶ 30. On July 26, 2023, Quigley underwent surgery for his detached retina. *Id.*, ¶ 31.

Prior to July 6, 2023, neither Dr. Hartzell nor Dr. Caringola had conducted an examination of Quigley's peripheral retina. *Id.*, ¶¶ 34, 35. The Amended Complaint alleges that the delay in Quigley's treatment of his retinal detachment, specifically Dr. Caringola and Dr. Hartzell's failure to conduct a timely and thorough peripheral retina examination, has caused him to suffer moderate to severe irreversible loss of quality and quantity vision in his left eye. *Id.*, ¶¶ 32, 34. A peripheral retina examination closer to the incident on February 16, 2023, would have detected Quigley's torn or detached retina, and such earlier detection would have materially improved his chances of good postoperative vision. *Id.*, ¶¶ 37-39.

## IV.     Discussion

Dr. Caringola and Dr. Hartzell argue that Quigley's Eighth Amendment claim must be dismissed because their respective conduct, as alleged in the Amended Complaint, does not support a finding that either acted with deliberate indifference to Quigley's serious eye condition. Under the Eighth Amendment, state prisoners have a right to medical care. *See Estelle v. Gamble*,

---

[4] Retinal detachment is a very serious injury that usually begins as a retinal tear. *Id.*, ¶¶ 26, 28. Early treatment can prevent a retinal tear from becoming detached. *Id.*, ¶ 28. When a retinal tear does lead to detachment, it will result in loss of peripheral vision, which can progress to total loss of vision. *Id.*

429 U.S. 97 (1976) (recognizing that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To state a claim for violation of his constitutional right to medical care, a plaintiff must allege facts that support findings that: (1) he had a serious medical need, and (2) acts or omissions by the defendant prison officials acted with deliberate indifference to that need.[5] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official acts with deliberate indifference to a prisoner's medical needs only when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "That is the equivalent of recklessness." *Wall v. Bushman*, 639 Fed. Appx. 92, 94 (3d Cir. 2015) (citing *Farmer*, 511 U.S. at 836–37). Such indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

In contrast, "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional

---

[5] Dr. Caringola and Dr. Hartzell do not dispute that Quigley's detached retina and resulting impairment constitute a serious medical need. Indeed, while "a 'very slight visual impairment' does not constitute a serious medical need [for Eighth Amendment purposes]," an individual's "optometry needs are serious ... if they are sufficiently severe to cause complications such as significant blurring, double vision, dizziness, or walking or falling into objects." *Parker v. Boring*, 2016 WL 3381287, at *8 (M.D. Pa. May 19, 2016) (quoting *Tormasi v. Hayman*, 452 Fed. Appx. 203, 206 (3d Cir. 2011)) (quoting *Borelli v. Askey*, 582 F. Supp. 512, 513 (E.D. Pa. 1984)), *report and recommendation adopted*, 2016 WL 3227250 (M.D. Pa. June 13, 2016).

judgment his behavior will not violate a prisoner's constitutional rights.")).  "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation."  *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106).  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  *Durmer*, 991 F.2d at 67 (citations omitted).  Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."  *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)).  *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

"Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017). These circumstances include, for example, where prison officials, "with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition.'" *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)) (internal citation

omitted). Similarly, prison officials may not deny reasonable requests for medical treatment when such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" *Id*. (quoting *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (internal citation omitted), or intentionally refuse to provide care where the need for such care is acknowledged. *Id*. (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)).

In support of his position that Dr. Caringola's conduct crossed the line from malpractice to deliberate indifference, Quigley focuses on her repeated failures to perform or order a peripheral retinal examination when presented with Quigley's progressively deteriorating vision and other symptoms. Courts have recognized that a plaintiff states a deliberate indifference claim where he "alleges that a treatment decision about known symptoms 'was a substantial departure from accepted professional judgment, practice, or standards' such that a reasonable jury could conclude that she 'actually did not base [her] decision on such judgment.'" *Manna v. Harper*, 2024 WL 5431555, at *9 (W.D. Pa. Aug. 12, 2024) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538–39 (3d Cir. 2017)). Quigley argues that this failure so materially departed from the professional standard of care for Quigley's condition that a jury could reasonably conclude that she did not rely upon her medical judgment. Quigley further asserts that the facts alleged supports an inference that Dr. Caringola recognized his need for prompt follow-up care, including a peripheral retinal examination, but permitted an unreasonable delay in that care. The Court agrees that, at this stage of the case, Quigley's allegations are sufficient to support an Eighth Amendment claim against Dr. Caringola.

The Court reaches the same conclusion with respect to the claim against Dr. Hartzell. Dr. Hartzell evaluated Quigley at the on-site retinal clinic on April 5, 2023; he noted that Quigley's vision in his left eye had decreased materially from 20/25 to 20/70 since his evaluation on

February 16, 2023, less than two months earlier. Rather than order a peripheral retina examination, Dr. Hartzell merely directed that Quigley "reconsult" as needed.  Quigley further faults Dr. Hartzell with failing to follow up on this already inadequate treatment plan.  As with the allegations against Dr. Caringola, those against Dr. Hartzell sufficiently support an Eighth Amendment claim.

**V.    Conclusion**

For the foregoing reasons, the motions to dismiss filed by Dr. Caringola (ECF No. 32) and Dr. Hartzell (ECF No. 30) will be denied.  A separate order follows.

DATED this 25th day of July, 2025.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE